# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CRIMINAL CASE NO. 1:10cr47

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Appellee, | ) |
| | ) |
| vs. | ) |
| | ) |
| JOE L. LANNING, | ) |
| Appellant. | ) |
| | ) |

## DECISION ON APPEAL AND ORDER

**THIS MATTER** is before the Court on the Appellant's Notice of Appeal. [Doc. 2].

## PROCEDURAL HISTORY

On November 12, 2009, Joe L. Lanning (Lanning) was issued a citation by United States Park Ranger Joseph Darling (Darling or Ranger Darling) for disorderly conduct within the special territorial jurisdiction of the United States; that is, the Blue Ridge Parkway, in violation of 36 C.F.R. §2.34(a)(2). [Doc. 1 at 2]. On July 22, 2010, Lanning moved to dismiss the citation. [Doc. 8-2]. His case came before Magistrate Judge Dennis L. Howell on July 27, 2010 at which time the Magistrate Judge denied the motion and proceeded to conduct a bench trial. After hearing the evidence, the Magistrate Judge found Lanning

guilty of disorderly conduct, sentenced him to serve fifteen days imprisonment, and ordered that he pay a fine of $1,000.00 along with an assessment of $10.00 and a processing fee of $25.00. [Doc. 1]. The Magistrate Judge also banned Lanning from all federal land except for the use of main thoroughfares for a two year period. [Id.]. From this conviction and sentence, Lanning has appealed.

## STANDARD OF REVIEW

A defendant who is convicted and sentenced by a magistrate judge is not entitled to a trial *de novo* by a district court. Fed.R.Crim.P. 58(g)(2)(D).

> An appeal of an otherwise final sentence imposed by a United States magistrate judge may be taken to a judge of the district court and this section shall apply ... as though the appeal were to a court of appeals from a sentence imposed by a district court.

18 U.S.C. §3742(h). In other words, "[t]he scope of appeal shall be the same as an appeal from a judgment of a district court to a court of appeals." Fed.R.Crim.P. 58(g)(2)(D).

## THE EVIDENCE PRESENTED AT TRIAL

Ranger Darling was on duty on November 12, 2009 at the Sleepy Gap Overlook area of the Blue Ridge Parkway in Buncombe County. [Doc. 6 at 39-40]. Due to a large number of complaints made to park headquarters about sexual activity in that area, the decision had been made to conduct a joint

2

operation between the National Park Service and the United States Forest Service. [Id. at 40; 43]. Ranger Darling was acting in an undercover plainclothes capacity on that day and was wearing a body wire and microphone. [Id. at 44]. Darling drove to the overlook, got out of his car and began walking around. [Id. at 44-45]. While walking on the trail, he encountered two men, one of whom was Lanning. [Id.]. When Ranger Darling walked past Lanning, Lanning grabbed his own groin but continued to walk. [Id.]. Ranger Darling said hello to Lanning as he passed. [Id.]. Darling walked on a ways and then circled back to engage Lanning in conversation. [Id.]. After casual conversation about the weather for a few moments, Ranger Darling mentioned that Asheville is an open community. [Id. at 47-48]. Lanning then told the ranger that he wanted Darling to have sex with him.[1] [Id. at 47]. Darling recalled that he said "okay" or words to that effect. [Id. at 51]. About twenty seconds later, Lanning walked over to Darling with his left hand extended and grabbed the ranger's genitals. [Id. at 47-48]. Based on the firmness of the grasp, Ranger Darling did not believe this was an accidental touching; however, he testified that he did not consent to the same. [Id. at 51-55]. At that point, Ranger Darling placed Lanning under arrest. [Id.

---

[1] Darling testified that Lanning used much more explicit language, the meaning of which could not be misunderstood. [Id. ("he told me he wanted me to f**k him.")].

3

at 47-48].

On cross-examination, Ranger Darling admitted that the purpose of the operation on that particular day was to focus on sexual solicitation by men of other men. [Id. at 56]. Although that was the goal on that particular day, had Darling encountered a heterosexual couple engaging in sexual conduct in public, they also would have been arrested. [Id. at 85]. In fact, up to that day, the only citations for disorderly conduct involving sex which Ranger Darling had issued were for heterosexual sex. [Id. at 88]. During the encounter with Lanning, there was no discussion of money and none was exchanged. [Id. at 61]. Ranger Darling admitted that he would not have arrested Lanning but for the grabbing of his genitals. [Id. at 48-61]. He also admitted, however, that his sole purpose in the encounter was to make Lanning believe that Darling was interested in having sex with Lanning. [Id. at 79].

The Magistrate Judge found that the Government had proven each element of the offense of disorderly conduct beyond a reasonable doubt. After considering the sentencing factors of 18 U.S.C. §3553, he sentenced Lanning to fifteen days imprisonment as well as the fines, assessments and banishment referenced above.

## DISCUSSION

**Insufficient evidence.**

Lanning's first argument on appeal is that there was insufficient evidence to prove beyond a reasonable doubt that he committed the offense of disorderly conduct.

> In reviewing the sufficiency of the evidence following a conviction, the court is to construe the evidence in the light most favorable to the government, assuming its credibility, and drawing all favorable inferences from it, and will sustain the [conviction] if *any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. If there is substantial evidence to support the [conviction], after viewing all of the evidence and the inferences therefrom in the light most favorable to the Government, the court must [sustain it]. Furthermore, this court cannot make [its] own credibility determinations but must assume that the [trier of fact] resolved all contradictions in testimony in favor of the Government.

United States v. Penniegraft, 641 F.3d 566, 571-72 (4th Cir.), cert. denied __ U.S. ___, 132 S.Ct. 564, 181 L.Ed.2d 407 (2011) (internal quotations and citations omitted; emphasis in original). In determining the issue of whether there is substantial evidence, this Court does not weigh the evidence. United States v. Combs, 26 F. App'x. 198, 201 (4th Cir.), cert. denied 535 U.S. 1072, 122 S.Ct. 1949, 152 L.Ed.2d 852 (2002) (citing United States v. Arrington, 719 F.2d 701, 704 (4th Cir.), cert. denied 465 U.S. 1028, 104 S.Ct. 1289, 79 L.Ed.2d 691 (1984)).

The regulation at issue, 36 C.F.R. §2.34(a)(2) provides in pertinent part that a "person commits disorderly conduct when, with intent to cause public alarm ..., or knowingly or recklessly creating a risk thereof, such person ... uses language, an utterance, or gesture, or engages in a display or act that is obscene, physically threatening or menacing[.]" The elements of this offense therefore are: (1) having the intent to cause public alarm; or, knowingly or recklessly creating a risk of public alarm; (2) using language, an utterance, or a gesture; or, engaging in a display or act; (3) which is obscene, physically threatening or menacing. United States v. Coutchavlis, 260 F.3d 1149 (9th Cir. 2001); United States v. Mather, 902 F.Supp. 560, 562 (E.D.Pa. 1995), affirmed 91 F.3d 127 (3rd Cir. 1996) ("the regulation is sufficiently plain on its face that we shall apply the ordinary meaning of its terms").

Lanning does not dispute that the conduct at issue occurred in public, nor could he. Mather, 902 F.Supp. at 564 ("a national park is the quintessential public place"). He does, however, dispute that grabbing his own groin and then grabbing the genitals of another person are obscene gestures or displays. In this regard, the Court notes that "the National Park Service expends significant public funds in its efforts to attract visitors, including countless children, to national parks." Id. These visitors should be

6

able to explore the parks "without concern of happening upon an open sex act." Id. Lanning also does not dispute that his conduct was sexual in nature.

Lanning does, however, argue that his conduct cannot be considered obscene because "no clothes were removed and there was no nudity." [Doc. 8 at 9]. According to Lanning, he "merely touched a consenting adult *outside* of [that adult's] clothing." [Id.] (emphasis in original). The Court first notes that appellate counsel repeatedly points to the allegedly consensual nature of this encounter. Ranger Darling testified that he did not consent to having his genitals grabbed, and the Magistrate Judge found his testimony credible. Whether the act was consensual or non-consensual, however, does not bear on whether it was obscene in this public park frequented by children and other adults not interested in such conduct. Mather, 902 F.Supp. 560 (consensual masturbation by two men in park obscene and violation of the disorderly conduct regulation); United States v. Lanen, 716 F.Supp. 208 (D.Md. 1989) (defendant who exposed himself to undercover ranger committed obscene act and convicted of disorderly conduct).

The federal regulation, unlike some state statutes, does not include nudity as an element of the obscene act, and no case has been found which so holds. Appellant cites United States v. Malone, 822 F.Supp. 1187 (E.D.Pa.

7

1993), in support of his contention that nudity must be involved in order for conduct to rise to the level of being obscene. That case, however, turned on the fact that there was no public involvement. In Malone, the defendant approached an undercover officer, began to rub his own genitalia, touched the officer's hand, asked about sex and finally touched the officer's chest. In vacating the disorderly conduct conviction, the court noted, first, that the government conceded it should be vacated and, second, found that "the public was not involved at all." Id. at 1188. There was simply no discussion by the court of the issue of nudity. Indeed, the court did not hold that the defendant's conduct was not obscene; it simply noted that the acts were not public.

Appellant has presented no authority to support his proposition that a violation of the regulation necessarily involve nudity. The regulation simply does not require it. Statler, 121 F.Supp.2d at 928 n.6 (noting that although the Virginia state statute would require exposure of the body, "Section 2.34 does not [because] the federal provision covers a broader range of acts"). It is undisputed that Lanning grabbed his own groin as well as the genitals of Ranger Darling. Viewing all of the evidence and the inferences therefrom in the light most favorable to the Government, there is sufficient evidence to

show that Lanning engaged in a gesture, display or act which was obscene. Penniegraft, 641 F.3d at 571-72.

A person may also be guilty of disorderly conduct if he uses a gesture or engages in a display or act which is physically threatening or menacing. 36 C.F.R. §2.34(a)(2). Lanning argues that because this was a consensual encounter, his conduct could not have risen to that level. In essence, he claims to have been lured into a sexual encounter during which he admittedly grabbed another man's genitals with sufficient force to indicate a desire for sex. [Doc. 8 at 11]. Ranger Darling, however, testified that he did not consent to this unexpected touching which he described as "firm." The unexpected, nonconsensual touching of a private body part is, as a matter of common sense, physically threatening and/or menacing. Black's Law Dictionary (7th ed.) (a threat is an indication of an approaching menace; menace implies assault).

Viewing the evidence in the light most favorable to the Government, and declining to second-guess the Magistrate Judge's credibility assessments, a rational trier of fact could have found that Lanning's conduct was physically threatening and/or menacing. Coutshavlis, 260 F.3d at 1155 (hitting the interior of a car and locking doors to prevent egress was threatening and

9

menacing); United States v. Dearing, 872 F.2d 431 (9th Cir. 1989) (screaming at officers and pointing finger at victim while in close proximity constituted threatening and menacing conduct). The Appellant's attack on the sufficiency of evidence of physically threatening or menacing conduct is therefore rejected.

Lanning next claims the evidence is insufficient to show the requisite intent under the regulation. He argues that he did not act with an intent to cause public alarm and that his actions did not knowingly or recklessly create a risk thereof. In support of this position, he notes that there were relatively few people around, he and the ranger were on a secluded trail, the encounter lasted only minutes and there was no evidence that Lanning intended to follow through with a sex act on the trail. He does not dispute, however, that he intentionally grabbed the ranger's genitals. Since that conduct was clearly an act of a sexual nature, the evidence, and Lanning's own admission, shows that he intentionally engaged in this conduct which, as discussed below, would most certainly cause public alarm.

Moreover, the evidence clearly supports a finding that Lanning's conduct was reckless. In Mather, 902 F.Supp. 560, a ranger who was on foot patrol in a national park observed two males walk down a foot path, leave the trail

10

and walk into the woods. Upon following, the ranger saw them both with pants down masturbating in front of each other. When ordered to stop, both men ran but then stopped. The court discussed "the recklessness of appellants' acts and the public nature of a park[.]" Id. at 564.

> [A]ppellants were, even on a subjective standard, aware that their actions could cause public alarm, and thus, acted recklessly. Mather testified at the hearing that "[t]he only thing that I would – that I would have to say is that even though my actions were inappropriate for the area," he had no intent to be seen. Mather later added: "Mr. Linn and I made a very, very - even though our actions, as I said, were inappropriate - we made a very, very conscious effort not to be seen." **It is this very effort that demonstrates appellants' subjective awareness of the risk of public alarm that they created.** Mather and Linn knew that their actions would cause public alarm if they were seen, yet they proceeded nonetheless, thus presenting a classic instance of reckless behavior under any definition. The Park Services's regulation does not require that an individual know to a metaphysical certainty that his conduct will cause a certain result; it merely requires that actor disregard the *risk* that the result will occur. ... As demonstrated by their behavior, these appellants clearly knew that the public [including children] would accept Congress's invitation to wander about the Park, but proceeded nevertheless.

Mather, 902 F. Supp. at 564-565 (italics in original, bold emphasis added).

Such is the case here. Lanning effectively concedes that his conduct was reckless by arguing there were few people around, it was a secluded trail, the encounter did not last long and he did not follow through with any sex acts. At any point during this encounter, a child or other individual not

11

expecting such conduct could have wandered down the trail only to be met with Lanning's grabbing of another man's genitalia coupled with a comment that he wanted to be "f—d." This is more than sufficient evidence to show that Lanning both knowingly and recklessly created a risk that public alarm would occur. Coutchavlis, 260 F.3d at 1154-55 ("the issue is not whether the public actually witnessed the act, but rather whether the act took place in a location accessible to the public;" thus, defendant's conduct knowingly and recklessly created a risk of public alarm); Lanen, 716 F.Supp. at 210 (obscene conduct directed solely at officer still done with recklessness where in public place).

The Appellant next claims that because the Government's position is not unambiguously correct, the rule of lenity requires that any remaining ambiguity be resolved in his favor. The record, he argues, does not establish which theory of disorderly conduct resulted in his conviction.

The Government, however, in argument to the court addressed each element of the offense of disorderly conduct and asserted that there were multiple ways in which the Defendant violated the regulation. [Doc. 6 at 100-103, 105-107]. The Magistrate Judge found Lanning guilty beyond a reasonable doubt of the offense of disorderly conduct, articulating findings which supported more than one theory of criminal responsibility. [Id. at 114-

12

115, 123-126].

The Appellant next argues that his conviction must be vacated in order to avoid issues of constitutional proportions. "To avoid those [constitutional] questions, this Court should construe §2.34 to proscribe sexual behavior only if it involved nudity or nonconsensual advances." [Doc. 8 at 14]. This argument is somewhat confusing in light of the Appellant's position on appeal that the regulation itself is unconstitutional. In any event, the arguments that only nudity and nonconsensual conduct may amount to obscene conduct has previously been discussed and rejected.

**Constitutionality of the regulation.**

The Appellant argues that the regulation at issue is unconstitutionally vague. In support of this claim, he argues that consensual touching outside clothing by two men is not prohibited by the regulation, which, he states is thus so vague as to be void.[2]

> [The Court] decline[s] [Lanning's] invitation to hold that §2.34 is unconstitutionally vague because it did not give him adequate notice that his conduct was prohibited. Whether a regulation is unconstitutionally vague is a question of law that is reviewed *de novo*. "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct

---

[2]It is again noted that the Magistrate Judge found the testimony of Ranger Darling to be credible that the touching was not consensual and was unexpected.

> it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." The Supreme Court [has] rejected the vagueness challenge on the ground that the statute in question contained "common words" ... that "anyone" would understand. Here, ... the regulation contain[s] only "common words," easily understandable by "people of ordinary intelligence." The words of §2.34 are not so obscure that they require any special skill to interpret. ... The regulation is not unconstitutionally vague; a person of ordinary intelligence could understand the words and would thus understand what conduct they prohibit.

Coutchavlis, 260 F.3d at 1155 (quoting Hill v. Colorado, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) (other citations omitted); Mather, 902 F.Supp. at 562 ("the regulation is sufficiently plain on its face that we shall apply the ordinary meaning of its terms").

The Coutchavlis and Mather courts have both ruled on this question of law and each found the regulation at issue is not unconstitutionally vague. "[T]he ordinary person exercising ordinary common sense can sufficiently understand and comply with" this regulation. Wag More Dogs, Ltd. Liability Corp. v. Cozart, __ F.3d __, 2012 WL 1851326 **10 (4th Cir. 2012) (internal quotation and citation omitted). Lanning's arguments are therefore rejected. Id.

Lanning also argues, albeit cursorily, that the regulation authorizes arbitrary and discriminatory enforcement because it allows selective prosecution of homosexuals engaged in consensual conduct. He asserts that

14

the arresting officer may determine that conduct amounting to nothing more than flirting between homosexuals is obscene or threatening. This argument is foreclosed, however, by the Magistrate Judge's finding that the conduct here was both nonconsensual and unexpected.

In addition,

> [w]hen the terms of a regulation are clear and not subject to attack for vagueness, the plaintiff bears a high burden to show that the standards used by officials enforcing the statute nevertheless give rise to a vagueness challenge. [Such] alleged vagueness in the enforcement of an otherwise-valid statute [will be evaluated] only if and when a pattern of unlawful [enforcement] appears. Until this occurs, however, a plaintiff pressing such a challenge will have failed to demonstrate that the [regulation] is unconstitutional.

Id. at **10-11 (internal quotations and citations omitted).

Lanning "has not come close to alleging that [the] enforcement of [the regulation] reveals a pattern of" such conduct. Id. Indeed, the only evidence on this point was that through the time of Lanning's charge, the only tickets that Ranger Darling had ever given for disorderly conduct related to sexual conduct by heterosexuals. [Doc. 6 at 114-15]. Lanning's speculations about possible hypothetical situations are therefore not at issue. Wag More Dogs, 2012 WL 1851326 **10-11.

Lanning's final constitutional challenge relies on a one paragraph argument in which he states that Congress has no interest "in regulating

15

fleeting over-the-clothing contact between consenting adults;" and, thus, to conclude that his conduct was obscene violates the First Amendment. [Doc. 8 at 16]. Since Lanning's entire argument relies on a statement of the facts that is different from the findings below, and which findings were supported by the evidence, that argument must be rejected. Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed.2d 1031 (1942) (speech that does not receive First Amendment protection includes lewd and obscene words).

**Reasonableness of the sentence.**

> A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence ... was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

18 U.S.C. 3742(a)(4).

The United States Sentencing Guidelines do not apply to Class B or C misdemeanors. U.S.S.G. §1B1.9; In re Solomon, 465 F.3d 114, 120 (3rd Cir. 2006) ("The commentary states that these offenses are excepted from the Guidelines for reasons of judicial economy[.]"); United States v. DeJesus, 277 F.3d 609, 611 (1st Cir. 2002). A violation of 36 C.F.R. §2.34 is a Class B misdemeanor. 36 C.F.R. §1.3(a) (punishable by imprisonment not to exceed six months); 18 U.S.C. §3559(a)(7) (offense punishable by imprisonment not

16

to exceed six months is Class B misdemeanor). Thus, the sentencing guidelines are inapplicable. Because the sentencing guidelines do not apply to this case, this Court's review is to determine if the sentence was "plainly unreasonable." United States v. Chavez, 204 F.3d 1305 (11th Cir. 2000); United States v. Floresdelgado, 131 F. App'x. 28 (4th Cir. 2005).

In determining whether a sentence is "plainly unreasonable," the court must first determine whether the sentence is simply unreasonable. United States v. Moulden, 478 F.3d 652, 656 (4th Cir. 2007). "This initial inquiry takes a more deferential appellate posture concerning issues of fact and the exercise of discretion than reasonable review for guidelines sentences." Id. (internal quotation and citation omitted). The sentencing court must consider the applicable §3553 factors and provide a statement of reasons. Id., at 657. "Only if this modified reasonableness analysis leads [the court] to conclude that the sentence was unreasonable, do[es] [the reviewing court] ask whether it is plainly so, relying on the definition of plain [used] in [the] plain error analysis – that is, clear or obvious." Id. "Under any circumstances, the plainly unreasonable standard is extremely deferential." DeJesus, 277 F.3d 609, 611

Finally, factual findings in support of an appellant's sentence are upheld unless those findings were clearly erroneous. United States v. Bursey, 416

F.3d 301, 305-06 (4th Cir.), cert. denied 546 U.S. 1139, 126 S.Ct. 1154, 163 L.Ed.2d 1003 (2006); United States v. ReBrook, 58 F.3d 961, 969 (4th Cir.), cert. denied 516 U.S. 970, 116 S.Ct. 431, 133 L.Ed.2d 346 (1995); United States v. Orme, 51 F.3d 269 (4th Cir. 1995) (applying standard to district court's review of magistrate's imposition of sentence).

Lanning's sole argument concerning his sentence of fifteen days imprisonment is that it is so disproportionate to the offense and sentences in other districts as to be plainly unreasonable. However, "proportionality review is not available for any sentence less than life imprisonment without the possibility of parole." United States v. Ming Hong, 242 F.3d 528, 532 (4th Cir.), cert. denied 534 U.S. 823, 122 S.Ct. 60, 151 L.Ed.2d 28 (2001); United States v. Cox, __ F. App'x. __, 2012 WL 453612 (4th Cir. 2012).

Moreover, during argument to the Magistrate Judge by Lanning's attorney, counsel addressed each factor provided in 18 U.S.C. §3553 and argued the issue of sentencing disparity. [Doc. 6 at 116-121]. The Magistrate Judge noted, however, that he had never given a sentence of less than thirty days imprisonment for disorderly conduct based on sexual activity. [Id. at 125-26]. In determining to give Lanning a sentence that was half the sentence he normally imposed, the Magistrate Judge made an individualized

assessment of Lanning's case. United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009). The issue of sentencing disparity is therefore rejected.

Lanning's final argument is that the Magistrate Judge did not have the statutory authority to ban him from all federal lands for a period of two years. See 18 U.S.C. §§3551, 3561, 3563(b)(6) & (22). The Government concedes that this portion of the sentence is legally incorrect and asks that the Appellant's conviction be affirmed but that his sentence be vacated. [Doc. 10 at 21-22 (Lanning could have been sentenced to fifteen days imprisonment to be followed by probation[3] with a special condition of banishment from federal land but banishment in addition to imprisonment was legally incorrect)]. Having considered the arguments and concessions of counsel, the Court agrees that because of this one informity the sentence must be vacated.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Appellant's conviction for disorderly conduct in violation of 36 C.F.R. 2.34(a) is hereby **AFFIRMED**.

---

[3] Though the Government argues for a sentence of active incarceration to be followed by probation pursuant to 18 U.S.C. §3561(a)(3) and (c), it is unclear whether the subsequent term of supervision would properly be probation or supervised release pursuant to 18 U.S.C. §3583(a). Since it is not certain what sentence the Magistrate Judge will impose upon remand, that question is left for the Magistrate Judge if he determines such supervision is appropriate.

**IT IS FURTHER ORDERED** that the Appellant's sentence is hereby **VACATED** and this matter is remanded to the Hon. Dennis L. Howell for re-sentencing.

Signed: June 4, 2012

Martin Reidinger
United States District Judge